IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMMANUEL S. YANGA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT<br>CORRECTIONAL SERVICES, et al.,<br><br>　　　　　Defendants. | **8:19CV420**<br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, Emmanuel S. Yanga, a prisoner incarcerated at the Nebraska State Penitentiary ("NSP") in Lincoln, Nebraska, filed his pro se Complaint on September 23, 2019, and subsequently was granted leave to proceed in forma pauperis. Plaintiff has paid the required initial partial filing fee. The court now conducts an initial review of the Complaint (Filing No. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff's Complaint declares "[t]his is a §1983 action … alleging violation of his Constitution rights and seeking monetary damages, declaration judgment, and injunctive relief." (Filing No. 1, p. 1.) State-law tort claims are also asserted.

There are fourteen Defendants: the Nebraska Department [of] Correctional Services ("NDCS"), two NSP "Wardens," Robert Madsen and Michele Wilhelm,[1] five named individuals who are identified as "staff agents" at NSP, and six named individuals who are identified as "correctional officers" at NSP. All individual Defendants are sued in their individual and official capacities.

---

[1] In point of fact, Madsen is the NDSC Deputy Director for Prisons, and Wilhelm is the NSP Warden.

Plaintiff alleges he was attacked by a fellow inmate on February 10, 2016, who used a padlock inside a sock as a weapon, and complains that his grievances about the incident were not properly handled. (*Ibid.*, ¶¶ 5-7, 13.) Plaintiff also alleges that on July 28, 2018, he was "assaulted while on restraint" by five of the individual Defendants and did not receive proper medical care for his injuries. (*Ibid.*, ¶¶ 10-11.) Plaintiff generally alleges that Defendants have "targeted" him with "short burst[s]" of force to teach him a lesson, have "triggered" him to be placed in the "Hole" or administrative segregation. (*Ibid.*, ¶¶ 8, 9, 12.)

Plaintiff sets out four causes of action: (1) a claim that he was denied "due process of law in violation of the 8th and 14th Amendment[s]" when he "was attacked and assaulted with a dangerous weapon" on February 10, 2016, and his "grievances been confiscate or undue process properly" (*ibid.*, ¶¶ 14, 15); (2) a claim that defendants violated "Plaintiff's 1st and 14th Amendment rights of access to be free from unjustified or excessive force" (*ibid.*, ¶¶ 15, 16); (3) a claim that "defendants violated state law of assault and battery and the regulations of [NDCS] with respect to the lawful use of force" when Plaintiff "was assaulted and attacked with a dangerous weapon" on February 10, 2016, and when he "was assaulted and pushed while handcuffed and hit with knees" on July 28, 2018; and (4) a claim that "defendants violated the state law of conversion and the regulations of [NDCS] with respect to the handling of prisoners rights to be free from such discrimination" (*ibid.*, ¶¶ 20-21). Plaintiff requests (1) a declaratory judgment that defendants violated the Constitution and State law when they used excessive force and confiscated or failed to process his grievances, (2) an injunction to prevent future violations, and (3) compensatory and punitive damages. (*Ibid.*, pp. 3-4.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28

U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF CLAIMS

#### A. Federal Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, a state, its agencies and instrumentalities, and its employees in their official capacities are not "persons" "as that term is used in § 1983, and [are] not suable under the statute,

regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991); *see also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). However, state officials sued in their official capacities for injunctive relief are "persons" under § 1983, because official capacity actions for prospective relief are not treated as actions against the State. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

In addition, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). However, under the doctrine of *Ex parte Young*, a state's Eleventh Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002); *Ex Parte Young*, 209 U.S. 123 (1908). As far as Plaintiff's claim for declaratory relief is concerned, claims for a declaration of past constitutional violations against the State, its agencies, and state employees in their official capacities are barred by Eleventh Amendment immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex Parte Young* exception to Eleventh Amendment immunity "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past).

In sum, Plaintiff's § 1983 claims cannot proceed against NDCS, and can only proceed against the NDCS employees insofar as Plaintiff (1) is suing the employee in his or her individual capacity to obtain monetary or declaratory relief with respect to past constitutional violations, or (2) is suing the employee in his or her official capacity to enjoin ongoing constitutional violations. *See, e.g., Chambers v. Cruz*, No. 4:19CV3047, 2019 WL 3253945, at *5-6 (D. Neb. July 19, 2019) (dismissing official-capacity claims for monetary and declaratory relief alleged against NDCS

employees). As will be explained below, however, there are not sufficient facts alleged in Plaintiff's Complaint to allow these claims to go forward at this time.

Plaintiff first complains he was attacked by another inmate in 2016. (Filing No. 1, ¶ 6 (unnumbered).) "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id.* at 834. In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted). Plaintiff's Complaint does not contain any facts to show that he was at substantial risk of being attacked by the other inmate or that any Defendant knew of and disregarded that risk.

Second, Plaintiff claims his grievances about the attack were not properly handled. (Filing No. 1, ¶ 7.) This is not a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no liberty interest in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances); *McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *3 (D. Neb. June 24, 2019) (holding inmate did not have viable due process claim against warden for ignoring his grievances).

Third, it is alleged that "Defendants influence and conspiracy all defendants listed and more target or to give plaintiff a short burst at all time unjustly force to teach him a lesson." (Filing No. 1, ¶ 8.) The court does not fully understand this

5

allegation, but to the extent Plaintiff is complaining that Defendants laid hands on him, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting In *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*

Fourth, Plaintiff complains about being placed in the "Hole" or administrative segregation. (Filing No. 1, ¶¶ 9, 12.) A prisoner must demonstrate he has suffered "atypical and significant hardship ... in relation to the ordinary incidents of prison life" to establish a claim under the Fourteenth Amendment Due Process clause. *Ballinger v. Cedar Cty.*, 810 F.3d 557, 560 (8th Cir. 2016) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The Eighth Circuit has "consistently held that a demotion to [administrative] segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 562 (quoting *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010)). As currently alleged, no actionable due process claim is stated.

Fifth, Plaintiff alleges he was assaulted by five Defendants, only one of whom is identified by name:

> On July 28, 2018, … plaintiff again has been assaulted while on restraint by officers/M. Spainhower and 4 other defendants listed on the complaint, after plaintiff cooperative he did not resist, defendants own did not met its procedures instead of uses excessive force against the plaintiff that intentionally cause serious physical injuries to the plaintiff in which resulted in significant physical injury. Defendants was physically and repeatedly pushes plaintiff that plaintiff complaine[d] repeatedly don[']t push me, but defendants decline plaintiff and swept plaintiff legs and pushed the plaintiff so hardly underground and hitting plaintiff with knees where plaintiff sustained one rib popup as a result of a prison officers listed, deliberately or recklessly disregard the plaintiff safety to a substantial risk of serious harm.

(Filing No. 1, ¶ 10.) "It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and

6

unusual punishment clause." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (internal quotations omitted).

In an Eighth Amendment excessive-force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson*, 503 U.S. at 7). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Plaintiff's Complaint does not contain sufficient information to permit the court to draw an inference that the "leg sweep" maneuver or knee strikes were unreasonable under the circumstances. Plaintiff alleges he was "assaulted," but not every violation of state tort or criminal assault laws committed by a state official results in a constitutional violation cognizable under § 1983. *Rubek v. Barnhart*, 814 F.2d 1283, 1285 (8th Cir. 1987). Plaintiff does not allege or provide enough facts to show that Defendants acted maliciously and sadistically. *See United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) ("One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)).

Also, the court cannot determine what role Officer Spainhower or other Defendants played in the alleged assault. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009).

The allegation that Defendants acted with deliberate or reckless disregard for Plaintiff's safety suggests he may be asserting a claim for supervisory liability or a claim that an officer failed to intervene to protect Plaintiff from the use of excessive

7

force by other officers, but no facts are alleged to support either type of claim. *See McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020) (to establish a public official's supervisory liability for a constitutional violation, the plaintiff must show: (1) the official received notice of a pattern of unconstitutional acts committed by subordinates; (2) the official demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) the official failed to take sufficient remedial action; and (4) such failure proximately caused injury to plaintiff); *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (an officer can be liable for failing to intervene to prevent the excessive use of force "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration.").

Sixth, and finally, it is alleged that a "prison medical official" did not order x-rays until 11 days after Plaintiff complained he needed medical attention following the alleged assault. (Filing No. 1, ¶ 11.) While the Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to objectively serious medical needs, *see Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000), Plaintiff does not identify the "prison medical official" or allege sufficient facts to state a claim for deliberate indifference against any Defendant. A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "[T]he plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted). Plaintiff must also plead and prove that the delay in obtaining medical treatment caused him harm. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (holding that a prisoner must suffer an actual injury to state an Eighth Amendment claim).

## B. State Claims

Plaintiff's state law claims against the prison officials in their individual capacities must be dismissed. Plaintiff's claims are based on conduct by prison officials during the course and scope of their employment. Therefore, Plaintiff is limited to asserting state law claims against them in their official capacities under

the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209, *et seq. See Bohl v. Buffalo County*, 557 N.W.2d 668 (Neb. 1997) (holding that if off-duty police officer was acting within the scope of his employment, the Tort Claims Act would apply and bar a suit against the officer in his individual capacity); *Guerry v. Frakes*, No. 8:15CV323, 2016 WL 4991501, at *2 (D. Neb. Sept. 16, 2016) (dismissing with prejudice individual-capacity claims alleged against NDCS employees).

Plaintiff's state law claims against NDCS and the prison officials in their official capacities will likewise be dismissed. Although the State of Nebraska is not a named defendant in this suit, Plaintiff's state law claims against NDCS and the prison officials in their official capacities are, in reality, against the State of Nebraska. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity") (internal citations omitted). Absent consent, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

Although the Nebraska Legislature has waived sovereign immunity for certain kinds of tort against the State of Nebraska and its agencies, this waiver does not extend to actions maintained in federal court. *Miller v. Nebraska Department of Correctional Services*, No. 4:04CV3228, 2005 WL 3072198, at *1 (D. Neb. Nov. 15, 2015). The STCA grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred...." Neb. Rev. Stat. § 81-8, 214 (Westlaw 2020). Consequently, any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Montin v. Moore*, 846 F.3d 289, 293 (8th Cir. 2017); *see Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *6 (D. Neb. May 1, 2018) (no subject-matter jurisdiction over STCA claim); *Guerry*, 2016 WL 4991501, at *3 (dismissing without prejudice claims alleged against NDCS and official-capacity claims alleged against NDCS employees). "State sovereign immunity bars actions in federal court

9

regardless of the basis for otherwise appropriate subject matter jurisdiction." *Montin*, 846 F.3d at 293; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002) (holding the Eleventh Amendment bars actions in federal court even where 28 U.S.C. § 1367, in general, authorizes supplemental jurisdiction).

In sum, Plaintiff's third and fourth causes of action, for assault, conversion, or other common law torts, fail to state a claim upon which relief may be granted against the NDCS employees sued in their individual capacities, and the Eleventh Amendment prevents this court from exercising subject matter jurisdiction over the state-law claims alleged against NDCS and its employees in their official capacities.

### IV. CONCLUSION

Plaintiff's Complaint is subject to dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to state a claim upon which relief may be granted, and, with respect to some claims, for lack of subject matter jurisdiction. However, the court on its own motion will give Plaintiff 30 days to file an Amended Complaint to state actionable § 1983 claims against individual Defendants. If an Amended Complaint is filed within 30 days, the court will conduct another initial review. If an Amended Complaint is not filed within 30 days, this action may be dismissed without further notice to Plaintiff.

IT IS THEREFORE ORDERED:

1.     Plaintiff's federal constitutional claims, as alleged in the first and second causes of action of Plaintiff's Complaint, are dismissed with prejudice, and without leave to amend. insofar as the claims are asserted against NDCS.

2.     The first and second causes of action are also dismissed with prejudice, and without leave to amend, insofar as Plaintiff is seeking to recover damages or to obtain declaratory relief from NDSC employees sued in their official capacities.

3.     Plaintiff's state-law claims, as alleged in the third and fourth causes of action of the Complaint, are dismissed without prejudice to refiling in State court.

4. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint that states a claim on which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without further notice to Plaintiff.

5. The clerk of the court is directed to set the following pro se case management deadline: **September 17, 2020**, check for amended complaint.

Dated this 18th day of August, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

11