IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMMANUEL S. YANGA,<br><br>              Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES; ROBERT MADSEN, MICHELE WILHELM, A. LARSON, F. HOWARD, RATHJI, DZULYNSKY, P. LARSON, EASTMAN, M. SPAINHOWER, PETER, WESSEL, SCHAFFER, and M. PATIDA,<br><br>              Defendants. | **8:19CV420**<br><br>**MEMORANDUM AND ORDER** |

      Plaintiff, Emmanuel S. Yanga, filed a pro se Complaint on September 23, 2019, when he was an inmate at the Nebraska State Penitentiary in Lincoln ("NSP" or "NSP-LN"). The court conducted an initial review of Plaintiff's Complaint and determined it was subject to preservice dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to state a claim upon which relief may be granted, and, with respect to some claims, for lack of subject matter jurisdiction. However, the court on its own motion gave Plaintiff leave to amend, which was accomplished on October 13, 2020. The court now conducts an initial review of Plaintiff's Amended Complaint (Filing 17) to determine whether summary dismissal is appropriate, or whether this action should proceed to service of process.

### I. STANDARDS ON INITIAL REVIEW

      The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review,

the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).[1]

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege

---

[1] Although Plaintiff was released from prison after the filing of his Amended Complaint, it remains subject to initial review under 28 U.S.C. § 1915A for a determination of whether summary dismissal is appropriate. *See Stanko v. Sheridan Cty.*, No. 8:20CV294, 2020 WL 6707360, at *1 (D. Neb. Nov. 13, 2020); *Mister v. Obadina*, No. 19-CV-00148-NJR, 2019 WL 1978343, at *1 n. 2 (S.D. Ill. May 3, 2019) ("A Section 1915A review is triggered when the plaintiff is a prisoner at the time of filing the complaint, whether or not the plaintiff is subsequently released from prison.") (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 669 n. 1 (7th Cir. 2012)). Plaintiff was also re-granted leave to proceed in forma pauperis following his release from prison. (See Filing 27.)

facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff's Amended Complaint is substantially similar to his prior pleading. Plaintiff declares that "[t]his is a 42 U.S.C. §1983 action … alleging violation of his constitutional rights and seeking monetary damage, declaration judgment, and injunctive relief." (Filing 17 at 1.) Common law tort claims are also asserted.

Named as Defendants are the Nebraska Department of Correctional Services ("NDCS") and thirteen NDCS employees, who are sued in their individual capacities only.[2] (Filing 17, ¶¶ 3, 4.) The individual Defendants are grouped into three categories: First are Defendants Robert Madsen and Michele Wilhelm,[3] who allegedly are "responsible for the operation and management of NSP-LN" and "ultimately responsible for the training and supervision of coorectional [*sic*] personnel employed at NSP-LN." (Filing 17, ¶ 3.) The second group of Defendants includes five "UM-CM[s] at NSP,"[4] identified as A. Larson, F. Howard, Rathji, Dzulysky, and P. Larsen, who allegedly are the "officer[s]-in-charge of the 8 a.m. to 4 p.m. shift of correctional personnel." (Filing 17, ¶ 4.) And in the third group of Defendants are six "correctional officers at NSP," who are identified as Eastman, M. Spainhower, Peter, Wessel, Schaffer, and M. Partida. (Filing 17, ¶ 4.)

Plaintiff alleges he was attacked by a fellow inmate on February 10, 2016, who used a padlock inside a sock as a weapon. Plaintiff complains his grievances about the incident were not properly handled, and no corrective action was taken. (Filing 17, ¶¶ 5-8, 13.) Plaintiff also alleges that on July 28, 2018, he was "assaulted

---

[2] The Nebraska Department of Correctional Services is named as a Defendant in the caption, but is not identified as a Defendant in the body of the Amended Complaint. In its previous Memorandum and Order, the court dismissed all claims alleged against NDCS.

[3] Madsen is the NDSC Deputy Director for Prisons, and Wilhelm is the NSP Warden.

[4] Presumably, a "UM" is a unit manager, and a "CM" is a case manager.

3

while on restraint" by the six correctional officers and did not receive proper medical care for his injuries. (Filing 17, ¶¶ 10, 11.) Plaintiff also generally alleges that Defendants have "targeted" him with "short burst[s]" of force to teach him a lesson, and have "triggered" him to be placed in the "hole" or administrative segregation. (Filing 17, ¶¶ 8, 9, 12.)

Plaintiff sets out four causes of action: (1) a claim that he was denied "due process of law in violation of the 8th and 14th Amendments" because he "was attacked and assaulted with a dangerous weapon and Defendants failed to protect him," and also because his "grievances [have] been confiscated or not given due process properly" (Filing 17, ¶¶ 14, 15); (2) a claim that Defendants violated "Plaintiff's 1st and 14th Amendment rights to be free of retaliation and unjustified or excessive force" (Filing 17, ¶¶ 16, 17); (3) a claim that "Defendants violated federal and state law of assault and battery and the regulations of [NDCS] with respect to the lawful use of force" when Plaintiff "was assaulted and attacked with a dangerous weapon while confined in prison," and when he "was assaulted by Defendants and pushed while he was handcuffed and [hit] with knees in prison." (Filing 17, ¶¶ 18, 19); and (4) a claim that "Defendants violated the state and federal law of conversion and the regulations of [NDCS] with respect to the handling of prisoners['] rights to be free from such discrimination" (Filing 17, ¶¶ 20, 21).

### III. DISCUSSION OF CLAIMS

#### A. First Cause of Action

Plaintiff first complains he was attacked by another inmate in 2016. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id.* at 834. In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* It mandates that the inmate show that the official "knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted). Plaintiff's Amended Complaint does not contain any facts to show that he was at substantial risk of being attacked by the other inmate or that any Defendant knew of and disregarded that risk. Plaintiff was informed by the court that his original Complaint was deficient in this respect, but he taken no steps to correct this deficiency. Thus, no plausible failure-to-protect claim is alleged.

Second, Plaintiff again claims his grievances about the attack were not properly handled. As the court previously informed Plaintiff, this is not a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no liberty interest in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances); *McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *3 (D. Neb. June 24, 2019) (holding inmate did not have viable due process claim against warden for ignoring his grievances).

Also, as the court explained in its previous Memorandum and Order, NDCS, as a state agency, is a not a "person" within the meaning of 42 U.S.C. § 1983, and, under the Eleventh Amendment, is immune from suit in federal court for monetary, declaratory, and injunctive relief. *See Yanga v. Nebraska Dep't Corr. Servs.*, No. 8:19CV420, 2020 WL 4784723, at *2 (D. Neb. Aug. 18, 2020).

In sum, Plaintiff's First Cause of Action fails to state a claim upon which relief may be granted against any Defendant, and it will be dismissed.

B. Second Cause of Action

Plaintiff claims he was "assaulted while on restraint" by the six correctional officers. "It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual

5

punishment clause." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (internal quotations omitted); *see also United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) ("One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)). "[T]he core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)); *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.*, they are using it maliciously and sadistically"). Factors to be considered include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

"Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)).

Plaintiff's original Complaint provided little factual information regarding the alleged assault. The Amended Complaint is marginally better, as Plaintiff alleges:

> On July 28, 2018, later, during the described in paragraphs 7 through 9, supra,[5] plaintiff again has been assaulted while on restraint

---

[5] In these paragraphs, Plaintiff alleges, *inter alia*, that he "suffered discomfort of those fractures/injuries" he sustained 28 months earlier when he was attacked by another inmate, and that he "then indicated that his injury actually prevent[ed] him from timely filing grievances and that his untimely grievances was confiscated unprocessed; and still plaintiff continue[d] follow up and exhausting grievances, and

6

>by Officer M. Spainhower and Officers Wessel, Schaffer, Peter, Eastman, M. Partida after Plaintiff cooperated and did not resist to be restrained. The above mentioned Defendants used excessive of [*sic*] force against Plaintiff that intentionally caused serious physical injuries. The above mentioned Defendants pushed repeatedly Plaintiff even after Plaintiff told them there was no need of doing so, this made Defendant Spainhower angry causing him to swept [*sic*] Plaintiff's legs making Plaintiff fall on the ground hard, and then after he was on the ground he was beaten on the ribs area with Defendants['] knees, which resulted in Plaintiff sustaining one rib popped up. The Defendants hitting him on the ribs were Officers Wessel, Schaffer, Peter, Eastman, and M. Partida.
>
>Plaintiff, after suffering his rib popped up, bruises, cuts, injured wrist, and pain he was not taken to the medical department to be treated for those injuries. Instead, he was taken to a holding cell. While in the holding cell, Plaintiff requested medical assistance letting the officers know that he was in so much pain. In response, the above mentioned Defendants threatened Plaintiff and made racial slurs, and harrased [*sic*] him.

(Filing 17, ¶ 10.)

For purposes of initial review, the court must accept as true all of plaintiff's factual allegations and afford him "all reasonable inferences that can be drawn from those allegations." *See Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014). Applying that standard, the court finds Plaintiff has stated a plausible excessive force claim against Defendants M. Spainhower, Wessel, Schaffer, Peter, Eastman, and M. Partida, all of whom are alleged to have directed participated in physically assaulting Plaintiff, without any justification, and inflicting injuries. But as to the other seven individual Defendants, no facts are alleged to state a plausible excessive force claim.

---

providing notification to Defendants concerning … not handling the grievances properly and use [of] unjustified force against plaintiff" (Filing 17, ¶ 7); that "Defendants influence and conspiracy all defendants listed and more target or to give Plaintiff a short burst at all time unjustify [*sic*] force to teach him a lesson" (Filing 17, ¶ 8); and that "Defendants trigger plaintiff all times to be taken to the 'hole' in any kind of situations and placed there for long terms" (Filing 17, ¶ 9).

An officer can be liable for failing to intervene to prevent the excessive use of force "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration," *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009), but that is not the case here. Plaintiff does not claim that any other Defendant witnessed the alleged assault.

The fact that Defendants Madsen and Wilhelm allegedly are "responsible for the operation and management of NSP-LN" and "ultimately responsible for the training and supervision of coorectional [*sic*] personnel employed at NSP-LN" does not permit a finding of liability. Likewise, the allegation that Defendants A. Larson, F. Howard, Rathji, Dzulysky, and P. Larsen are the "officer[s]-in-charge of the 8 a.m. to 4 p.m. shift of correctional personnel" does not permit a finding of liability. "It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). Supervisors can incur liability "for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices," *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)), but Plaintiff makes no such allegation.

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to objectively serious medical needs. *See Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). An objectively serious medical need is one "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). A plaintiff claiming deliberate indifference must show an objectively serious medical need that the "defendant actually knew of, but deliberately disregarded." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a

substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (internal quotation marks and citations omitted).

Once again giving Plaintiff the benefit of all reasonable inferences that can be drawn from the allegations of his Amended Complaint, the court finds that a plausible claim for deliberate indifference to Plaintiff's objectively serious medical needs is stated against Defendants M. Spainhower, Wessel, Schaffer, Peter, Eastman, and M. Partida, who allegedly placed Plaintiff in a holding cell rather than taking him to the medical department for treatment of his popped rib, bruises, cuts, and injured wrist. But as to the other seven individual Defendants, who are not alleged to have had any knowledge of Plaintiff's injuries, no plausible claim for relief is stated. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996).

It is next alleged that "Defendants influence and conspiracy all defendants listed and more target or to give plaintiff a short burst at all time unjustly force to teach him a lesson." (Filing 17, ¶ 8) Plaintiff's original Complaint contained the same allegation. (Filing 1, ¶ 8.) The court still does not understand this allegation, but to the extent Plaintiff is complaining that Defendants laid hands on him at some time other than July 28, 2018, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting In *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* To the extent Plaintiff may be attempting to allege the existence of a conspiracy, he has failed to plead necessary facts. To state a § 1983 conspiracy claim, a plaintiff must allege "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. A plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988). And if this allegation is intended to state a First Amendment retaliation claim, it fails because there is no apparent causal connection between the alleged targeting and any protected activity in which Plaintiff may have engaged. "To prevail on a §

1983 claim for retaliation in violation of the First Amendment, [Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in the protected speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)).

Finally, Plaintiff realleges his general complaints about being placed in the "hole" or administrative segregation. A prisoner must demonstrate he has suffered "atypical and significant hardship ... in relation to the ordinary incidents of prison life" to establish a claim under the Fourteenth Amendment Due Process clause. *Ballinger v. Cedar Cty.*, 810 F.3d 557, 560 (8th Cir. 2016) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The Eighth Circuit has "consistently held that a demotion to [administrative] segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 562 (quoting *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010)). Because Plaintiff has not alleged any additional facts, no plausible due process claim is stated in the Amended Complaint.

In sum, Plaintiff has alleged sufficient facts in the Amended Complaint to state plausible Eighth Amendment claims against the six correctional officers, Defendants M. Spainhower, Wessel, Schaffer, Peter, Eastman, and M. Partida, for their use of excessive force and deliberate indifference to Plaintiff's resulting medical needs. As to all other individual Defendants, however, no plausible claim for relief is stated. And, for reasons already explained in connection with Plaintiff's First Cause of Action, no § 1983 claim alleged in the Second Cause of Action can be maintained against NDCS.[6]

---

[6] Plaintiff's request for injunctive relief is moot because he is no longer suing Defendants in their official capacities and because he is no longer a prisoner at NSP. *See Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute

C. Third and Fourth Causes of Action

Plaintiff's state law claims against the prison officials must be dismissed. Plaintiff's claims are based on conduct by prison officials during the course and scope of their employment. Therefore, Plaintiff is limited to asserting state law claims against them in their official capacities under the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209, *et seq. See Bohl v. Buffalo County*, 557 N.W.2d 668 (Neb. 1997) (holding that if off-duty police officer was acting within the scope of his employment, the Tort Claims Act would apply and bar a suit against the officer in his individual capacity); *Guerry v. Frakes*, No. 8:15CV323, 2016 WL 4991501, at *2 (D. Neb. Sept. 16, 2016) (dismissing with prejudice individual-capacity claims alleged against NDCS employees).

Any state law claim alleged against NDCS must also be dismissed. Absent consent, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Although the Nebraska Legislature has waived sovereign immunity for certain kinds of tort against the State of Nebraska and its agencies, this waiver does not extend to actions maintained in federal court. *Miller v. Nebraska Department of Correctional Services*, No. 4:04CV3228, 2005 WL 3072198, at *1 (D. Neb. Nov. 15, 2015). The State Tort Claims Act grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred...." Neb. Rev. Stat. § 81-8, 214 (Westlaw 2020).

Plaintiff's Amended Complaint makes reference to "federal law … of assault and battery" in the Third Cause of Action, (Filing 17, ¶ 19), but "there is no federal common law claim for assault or battery." *Henderson v. Williams,* No. 3:10-CV-1621 (JCH), 2013 WL 1984545, at *3 n.3 (D. Conn. May 13, 2013). Moreover, "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type

---

because plaintiff was moved to another institution , plaintiff's claims for injunctive relief against defendants were moot).

of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *see Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018) ("The Court has not found any case that recognizes either an assault or a battery claim grounded in § 1983, and Plaintiff's counsel failed to provide a satisfactory reason during oral argument for recognizing federal assault and battery claims in this context."), *aff'd*, 765 F. App'x 493 (2d Cir. 2019), *cert. denied sub nom. Boyler v. City of Lackawanna, New York*, 140 S. Ct. 63 (2019).

Likewise unavailing is the reference to "federal law of conversion" in the Fourth Cause of Action. (Filing 17, ¶ 21.) *See Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, 731 F. App'x 288, 291 (5th Cir. 2018) ("The section 1983 claims alleging misappropriation and conversion fail for a reason even more fundamental than the one the district court cited: they are rights created under state law, but section 1983 is only a vehicle for enforcing rights 'secured by the Constitution and laws' of the United States." (quoting 42 U.S.C. § 1983)). Plaintiff's "conversion" claim presumably relates to the alleged confiscation of his grievances, but there are not sufficient facts alleged to state a plausible due process claim. While a section 1983 plaintiff may prevail on a procedural due process claim when deprived of property as the result of an established state procedure, the *Parratt-Hudson* doctrine[7] limits the due process inquiry to the adequacy of post-deprivation state remedies if the conduct of the state officials is random and unauthorized. *See McCracken v. Camp*, No. CV85-L-284, 1986 WL 8572, at *2 (D. Neb. Aug. 1, 1986) (holding that inmate's ability to bring state court action provided all the process that was due).

In sum, the Third and Fourth Causes of Action do not state claims upon which relief may be granted, and they will be dismissed.

---

[7] *See Parratt v. Taylor,* 451 U.S. 527, 53-45 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986); *Hudson v. Palmer,* 468 U.S. 517, 529-37 (1984); *see also Zinermon v. Burch,* 494 U.S. 113, 128-32 (1990) (explaining that the rationale behind the *Parratt-Hudson* doctrine is that states could not predict and therefore could not be expected to safeguard against random and unauthorized deprivations through pre-deprivation processes).

IV. CONCLUSION

This case may proceed to service of process against the six NDCS correctional officers, in their individual capacities only, and only with respect to two Eighth Amendment claims that are alleged in the Second Cause of Action of Plaintiff's Amended Complaint: (1) the use of excessive force against Plaintiff on July 28, 2018; and (2) deliberate indifference to Plaintiff's objectively serious medical needs as a result of injuries sustained in the July 28, 2018 incident. All other claims alleged against these six Defendants, and all claims alleged against other Defendants, are subject to preservice dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A.

Plaintiff has not provided the complete names of the six correctional officers who are the remaining Defendants.[8] From the court's own search of the State of Nebraska Online Employee Directory,[9] it was found that four current NDCS employees at the Nebraska State Penitentiary have names that are correct matches: Cody Eastman; Micala L. Wessel; Galen R. Schaffer; and Matthew U. Partida. The court was unable to find a directory listing for Defendants M. Spainhower and Peter.[10] Accordingly, the court will direct the clerk of the court to complete summons forms and USM-285 forms for Defendants Eastman, Wessel, Schaffer, and M. Partida using the information found in the court's search of the State of Nebraska Online Employee Directory for service by the United States Marshals Service.[11] For Defendants M. Spainhower and Peter, Plaintiff must provide additional identifying information (i.e. full names and/or address) to permit the Marshals Service to initiate service of process.

---

[8] The only identifying information provided in the Complaint and Amended Complaint is that Defendants Wessel and Peter held the rank of corporal, and Defendant Eastman was a lieutenant. (Filing 1 at 4; Filing 17 at 7.)

[9] Available at https://ne-phonebook.ne.gov/PhoneBook/faces/welcome.jsp.

[10] However, there was a listing for a Kade T. SpainHower.

[11] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

IT IS THEREFORE ORDERED:

1. For purposes of initial review only, Plaintiff has stated viable Eighth Amendment claims against Defendants Eastman, M. Spainhower, Peter, Wessel, Schaffer, and M. Partida, in their individual capacities only, for (1) their alleged use of excessive force against Plaintiff on July 28, 2018; and (2) deliberate indifference to Plaintiff's objectively serious medical needs, as a result of injuries he allegedly sustained in the July 28, 2018 incident.

2. All other claims alleged in Plaintiff's Amended Complaint are dismissed without prejudice.

3. The clerk of the court may "terminate" the following Defendants, who shall no longer be parties to this action: (1) Nebraska Department of Correctional Services; (2) Robert Madsen; (3) Michele Wilhelm, (4) A. Larson; (5) F. Howard; (6) Rathji, (7) Dzulysky; and (8) P. Larsen.

4. This action shall proceed to service of process against the following six Defendants, in their individual capacities only: (1) Eastman; (2) M. Spainhower; (3) Peter; (4) Wessel; (5) Schaffer; and (6) M. Partida.

5. For service of process on Defendants Eastman, Wessel, Schaffer, and M. Partida in their individual capacities, the clerk of the court is directed to complete a summons form and a USM-285 form for Cody Eastman; Micala L. Wessel; Galen R. Schaffer; and Matthew U. Partida using the address "Nebraska State Penitentiary, 4201 South 14th Street, Lincoln, NE 68502," and forward them together with a copy of the Amended Complaint (Filing 17) and a copy of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve Defendants Eastman, Wessel, Schaffer, and M. Partida personally in their individual capacities at the Nebraska State Penitentiary, 4201 South 14th Street, Lincoln, NE 68502. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

6. To obtain service of process on Defendants M. Spainhower and Peter, Plaintiff must complete and return the summons form that the clerk of the court will provide. The clerk of the court shall send two summons forms and two USM-285 forms to Plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the clerk of the court. In the absence of the forms, service of process cannot occur.

7. Upon receipt of the completed forms from Plaintiff, the clerk of the court will sign the summons forms and forward them together with a copy of the Amended Complaint (Filing 17) and a copy of this Memorandum and Order to the United States Marshals Service for service of process on Defendants M. Spainhower and Peter. The Marshals Service shall serve the Defendant using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

8. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

9. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

10. The clerk of court is directed to set the following case management deadline: **May 12, 2021**: check for completion of service of process.

11. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

12. Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The clerk's

office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 11th day of February, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge