IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EMMANUEL S. YANGA,<br><br>                Plaintiff,<br><br>vs.<br><br>EASTMAN, correctional officer at state prison of Nebraska, in their individual and official capacities; WESSEL, correctional officer at state prison of Nebraska, in their individual and official capacities; SCHAFFER, correctional officer at state prison of Nebraska, in their individual and official capacities; and PATIDA, correctional officer at state prison of Nebraska, in their individual and official capacities,<br><br>                Defendants. | 8:19–CV–420<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      This matter comes before the Court on Defendants' Motion for Summary Judgment. Filing 80. Plaintiff Emmanuel S. Yanga's suit derives from an incident that occurred on July 28, 2018, while he was incarcerated at the Nebraska State Penitentiary. Filing 17. His two claims in this suit are brought pursuant to 42 U.S.C. § 1983 and allege violations of the Eighth and Fourteenth Amendments to the United States Constitution against four officers with the Nebraska Department of Correctional Services. Filing 17; Filing 28 at 14; Filing 51. Specifically, he brings: (1) an excessive force claim; and (2) a deliberate indifference to medical needs claim against Defendants Cody Eastman, Matthew Partida, Galen Schaffer, and Micala Wessel. Filing 17; Filing 28. For the reasons stated below, the Court grants Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

### A. Factual Background

      Plaintiff initially brought several different claims against various Defendants associated with the Nebraska Department of Correctional Services based on incidents that allegedly occurred

1

while Plaintiff was incarcerated at the Nebraska State Penitentiary. *See generally* Filing 1, Filing 17. As discussed more thoroughly in the Procedural Background portion of this Order below, many of Plaintiff's original claims and the Defendants he brought them against were previously dismissed. The Court now recounts the facts pertinent to the present Motion for Summary Judgment and limits its discussion to those circumstances that are relevant to the remaining claims still before the Court. Unless otherwise noted, the following facts are taken from properly referenced evidentiary materials cited in the parties' briefs as required by NECivR 56.1. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").[1]

Plaintiff was an inmate at the Nebraska State Penitentiary at all relevant times pertinent to this suit. Filing 17 at 3; Filing 81 at 1; Filing 85 at 4.[2] The evidence before the Court indicates that

---

[1] Defendants' brief in support of summary judgment complies with this Court's local rules because it properly includes "a separate statement of material facts" consisting of short, numbered paragraphs with appropriate pinpoint references. *See* NECivR 56.1(a)(1)–(2); Filing 81 at 1–6 (¶¶1–41). Therefore, Defendants' "[p]roperly referenced material facts . . . are considered admitted unless controverted in [Plaintiff's] responses." NECivR 56.1(b)(2) (emphasis omitted). The Court acknowledges Plaintiff's status as a *pro se* litigant bringing this action *in forma pauperis*. Filing 9 Filing 27. The Court further recognizes that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). Nevertheless, one's "status as a pro se litigant does not excuse him from complying with" Fed. R. Civ. P. 56 and NECivR 56.1. *Carter v. Muldoon*, No. 8:17CV319, 2018 WL 10228384, at *1 (D. Neb. Dec. 19, 2018), *aff'd*, 780 F. App'x 392 (8th Cir. 2019); *see also Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (noting a litigant's *pro se* status "did not entitle him to disregard the Federal Rules of Civil Procedure," and further concluding that he failed to establish excusable neglect for missing a filing deadline where "[t]he local rule requiring a response to a summary judgment motion within twenty days was clear"). Plaintiff did not comply with NECivR 56.1(b)(2) in his opposition filing because he did not respond to Defendants' statement of material facts as required. *See generally* Filing 85. Nor did Plaintiff include any evidentiary materials of his own along with his opposition filing for this Court's consideration. The United States Court of Appeals for the Eighth Circuit has "consistently held that district courts are not required to wade through the entire record of the case on a *sua sponte* hunt for facts that might support a party's opposition to summary judgment." *Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022), *reh'g denied*, No. 20-2884, 2022 WL 1564037 (8th Cir. May 18, 2022) (citing cases). One's "status as a *pro se* litigant does not change that expectation." *Id.*

[2] Plaintiff was incarcerated at the time he initially commenced this action. *See* Filing 1 at 1; Filing 17 at 1. However, the record indicates he was no longer incarcerated at the time Defendants filed this present Motion for Summary Judgment. *See* Filing 27 (denoting Plaintiff's status as a "non-prisoner" in an order dated January 12, 2021).

on July 28, 2018, a caseworker directed Plaintiff to leave the lobby of a housing unit at the penitentiary. Filing 82-2 at 4. Plaintiff responded by telling the caseworker, "I don't talk to you! I don't talk to you! You are a piece of shit! Fuck you!" Filing 82-2 at 4. Plaintiff continued to refuse the caseworker's direction to leave, and other corrections officers were radioed in to assist. Filing 82-2 at 4. Corporal Meeko Spainhower responded and placed Plaintiff in handcuffs. Filing 82-2 at 4. Corporal Galen Schaffer also responded and assisted Spainhower in escorting Plaintiff to a different area of the facility known as "Turnkey Holding." Filing 82-2 at 4.

According to the Affidavit filed by Schaffer in this case, Schaffer "put a C-Clamp on [Plaintiff's] right arm to assist in escorting him to holding." Filing 82-4 at 2. That is, Schaffer grasped Plaintiff's "arm just above the elbow to facilitate control." Filing 82-5 at 2. Schaffer avers that Spainhower gave Plaintiff "at least three direct orders . . . to keep walking or that he was going to take [Plaintiff] to the ground." Filing 82-4 at 2. According to Schaffer, Plaintiff continued to refuse Spainhower's orders, resulting in Spainhower taking Plaintiff to the ground. Filing 82-4 at 2. Once Plaintiff was on the ground, Spainhower stated over the radio that there was a use of force in progress in the "Front Yard." Filing 82-2 at 4. Spainhower and Schaffer continued to hold Plaintiff on the ground; Spainhower did so by placing his right knee on Plaintiff's back while Schaffer pressed both his hands against Plaintiff's back. Filing 82-2 at 4.

Officer DuPlessis then "arrived and placed [Plaintiff's] legs into a figure four and placed leg irons onto [Plaintiff's] legs. Filing 82-2 at 4–5. Once the officers secured Plaintiff, Defendant Micala Wessel and Defendant Matthew Partida assisted them in carrying Plaintiff to Turnkey Holding. Filing 82-2 at 5. Schaffer carried Plaintiff by his right shoulder while Partida and Wessel carried Plaintiff by his legs. Filing 82-3 at 2; Filing 82-4 at 2; Filing 82-6 at 2. After Plaintiff was placed in a holding cell, Corporal Kable Davis attempted to interview him. Filing 82-1 at 1. Davis

3

avers that he asked Plaintiff "if he had any comments, questions or concerns regarding force that was used against him that morning" and "handed him a piece of paper and a pen but he refused to sign everything." Filing 82-1 at 2. Defendant Cody Eastman—a supervisor at the Nebraska State Penitentiary—also attempted to interview Plaintiff, but Plaintiff "would not answer any of [Eastman's] questions." Filing 82-2 at 1, 3. Eastman avers that a Licensed Practical Nurse "evaluated [Plaintiff] due to the use of force and she noted no injuries." Filing 82-2 at 3.[3]

Although there is no evidence before the Court to support the following proposition, Plaintiff alleges in his Amended Complaint that as a result of the force that was used against him, "his rib popped up, [and he suffered] bruises, cuts, injured wrist, and pain[.]" Filing 17 at 4. Plaintiff further alleges, without evidentiary support, that he "requested medical assistance letting the officers know that he was in so much pain" but that "Defendants threatened Plaintiff and made racial slurs, and harassed him." Filing 17 at 4. Plaintiff claims that he "complained for eleven days of pain, discomfort, and nerve damage, and it was [not] until the eleventh day that he was seen by a medical provider and given an x-ray exam." Filing 17 at 4.

## B. Procedural Background

Plaintiff filed his initial Complaint on September 23, 2019. Filing 1 at 1. At that time, he alleged four different "causes of action" against the Nebraska Department of Correctional Services and a plethora of persons associated with the Nebraska Department of Correctional Services in

---

[3] The Court notes that Plaintiff's Amended Complaint suggests a different version of events, and his responsive filing to Defendants' Motion for Summary Judgment generally disputes the veracity of Defendants' evidence. *See e.g.*, Filing 17 at 3–4 (Plaintiff alleging that Defendants "assaulted" him even though he was cooperating and did not resist being restrained); Filing 85 at 7 (Plaintiff contending "that certain statements proffered by Defendants are false"). However, Plaintiff does not point to any actual evidence in support of these assertions. As the non-moving party, Plaintiff is required to "cite particular materials in the record or show that the materials cited do not establish the . . . absence of a genuine dispute." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (cleaned up) (citing Fed. R. Civ. P. 56(c)(1). Plaintiff "may not simply rest on the hope of discrediting the movant's evidence at trial." *Erickson*, 31 F.4th at 1048 (quoting *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2016)).

both their individual and official capacities. Filing 1 at 1; *see also* Filing 14 at 1. Senior United States District Judge Richard G. Kopf later dismissed Plaintiff's original Complaint for various reasons but granted Plaintiff the opportunity to file an Amended Complaint. Filing 14 at 10–11.[4]

Plaintiff filed his Amended Complaint thereafter on October 13, 2020, naming thirteen Defendants "in their individual capacities." *See* Filing 17 at 1–2. This is the operative Complaint for purposes of the present Motion for Summary Judgment. In his Amended Complaint, Plaintiff again brought four different "causes of action" pursuant to 42 U.S.C. § 1983. Filing 17 at 1, 5–6. Specifically, he claimed violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution. Filing 17 at 5. Plaintiff also claimed violations of federal law, Nebraska state law, and regulations of the Nebraska Department of Correctional Services. Filing 17 at 5–6. As before, Judge Kopf conducted a preliminary review of Plaintiff's Amended Complaint to determine whether summary dismissal was appropriate or whether Plaintiff's action should proceed to service of process. Filing 28 at 1.

Judge Kopf ultimately determined that Plaintiff's "case may proceed to service of process against . . . six [Nebraska Department of Correctional Services] correctional officers, in their individual capacities only, and only with respect to two Eighth Amendment claims that are alleged in the Second Cause of Action of Plaintiff's Amended Complaint[.]" Filing 28 at 13. As a result, Plaintiff's Complaint was limited to claims against Defendants Eastman, Schaffer, Partida, and Wessel, as well as "M. Spainhower and Peter" for "(1) their alleged use of excessive force against

---

[4] Specifically, Judge Kopf dismissed Plaintiff's federal constitutional claims with prejudice and without leave to amend insofar as the claims were asserted against the Nebraska Department of Correctional Services because "the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities." Filing 14 at 4, 10. Judge Kopf also dismissed Plaintiff's first and second causes of action without leave to amend "insofar as Plaintiff is seeking to recover damages or to obtain declaratory relief from [Nebraska Department of Correctional Services] employees sued in their official capacities. Filing 14 at 10. Finally, Judge Kopf dismissed "Plaintiff's state-law claims, as alleged in the third and fourth causes of action of the Complaint . . . without prejudice to refiling in State court." Filing 14 at 10.

Plaintiff on July 28, 2018; and (2) deliberate indifference to Plaintiff's objectively serious medical needs, as a result of injuries he allegedly sustained in the July 28, 2018 incident." Filing 28 at 14. The Defendants were later limited to Defendants Eastman, Schaffer, Partida, and Wessel based on Plaintiff's failure to provide sufficient information to serve Spainhower and Peter. *See* Filing 51. The four remaining Defendants each filed their respective Answers to Plaintiff's Amended Complaint on March 15, 2021. *See* Filing 36 (Eastman), Filing 37 (Partida), Filing 38 (Schaffer), Filing 39 (Wessel).

On September 1, 2022, Defendants moved for summary judgment on the two remaining claims at issue in this case. Filing 80. Along with their motion, Defendants filed an accompanying brief and included six affidavits in evidentiary support. Filing 81, Filing 82. Plaintiff submitted a responsive filing (albeit, captioned as a "Motion to Strike) on September 12, 2022. Filing 85. However, Plaintiff did not submit any evidentiary materials along with his filing. Filing 85.[5]

## II. LEGAL ANALYSIS

### A. Qualified Immunity Standards on Summary Judgment

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Put differently, qualified immunity "protects all but the

---

[5] Plaintiff also submitted a separate filing on September 2, 2022, captioned "Motion making sense of Qualified immunity: Summary Judgment and issues For the trier of Fact." Filing 83. The Court has reviewed this filing, which—in significant part—addresses considerations that are inapposite to the present Motion for Summary Judgment (*e.g.*, venue, personal jurisdiction, the distinction between official and individual capacity claims, etc.). Moreover, Plaintiff does not appear to actually request that this Court take any specific action on Defendants' Motion for Summary Judgment in Filing 83. Plaintiff's so-called "Motion to Strike," Filing 85, is more responsive to Defendants' Motion for Summary Judgment and specifically requests that the Court deny Defendants' Motion for Summary Judgment. Filing 85 at 12. Accordingly, although the Court has reviewed the matters Plaintiff put forth in both Filing 83 and Filing 85, the Court understands Filing 85 to be Plaintiff's operative response to Defendants' Motion for Summary Judgment.

plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Its protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted).

Where the defense of qualified immunity is invoked "[o]n summary judgment, a defendant official is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (internal quotation marks omitted). Under this two-pronged inquiry, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.[6] A district court may find for the defendant on either prong, but it "may not deny qualified immunity without answering both questions in the plaintiff's favor." *See Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (quoting *Walton*, 752 F.3d at 1116). "As such, a district court 'should [not] deny summary judgment any time a material issue of fact remains on the [constitutional violation] claim [because to do so] could undermine the goal of qualified immunity.'" *Watson*, 2 F.4th at 1112 (quoting *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (alterations in original).

---

[6] Citing the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), Defendants incorrectly suggest this Court is required to assess both prongs of the qualified immunity analysis. Filing 81 at 8–9. The Supreme Court expressly abandoned *Saucier*'s mandatory two-step approach in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Following *Pearson*, courts may find a defendant is entitled to qualified immunity under either prong. For example, in the Eighth Circuit's en banc opinion in *Morgan v. Robinson*, the court concluded that it "need not decide" whether a constitutional violation occurred because the defendant "did not violate a 'clearly established statutory or constitutional right[ ] of which a reasonable person would have known.'" 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (alteration in original) (quoting *Pearson*, 555 U.S. at 231).

With respect to the second prong, a right is clearly established if it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted) (quoting *Ashcroft*, 563 U.S. at 741). The "burden to demonstrate that the law is clearly established" is on the plaintiff. *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (en banc). "[T]he longstanding principle" is that "'clearly established law' should not be defined 'at a high level of generality.'" *Id.* at 523 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Rather, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Mullenix*, 577 U.S. at 12 ("The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" (quoting *Ashcroft*, 563 U.S. at 742)). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan*, 920 F.3d at 524 (quoting *Ashcroft*, 563 U.S. at 741).

On a motion for summary judgment "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

### B. The Eighth Amendment Excessive Force Claims

*1. Legal Standards*

In an Eighth Amendment excessive force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Smith v. Conway Cnty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (in turn quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). An Eighth Amendment excessive force claim is distinct from a Fourth Amendment excessive force claim, and the two are subject to different legal standards. *Santiago*, 707 F.3d at 990. Unlike a Fourth Amendment excessive force claim where courts look to the objective reasonableness of officers' actions "without regard to their underlying intent or motivation," in an Eighth Amendment excessive force claim "the subjective motivations of the individual officers are of central importance in deciding whether force was used maliciously and sadistically to cause harm . . . ." *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (cleaned up).

Thus, an Eighth Amendment excessive force claim presents a "less protective test" than that which applies to free citizens under the Fourth Amendment. *Id.* "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* at 1138 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Circuit has described this as "the intent to harm standard." *See Stark v. Lee Cnty., Iowa*, 993 F.3d 622, 625 (8th Cir. 2021) (noting the "intent to harm standard . . . is appropriate in contexts in which a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff . . .").

> Accordingly, when an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."

9

*Burns*, 752 F.3d at 1139 (quoting *Crawford-El v. Britton*, 532 U.S. 574, 600 (1998)).

        2. *Plaintiff's Eighth Amendment Excessive Force Claim Against Eastman*

     The Court begins by first granting summary judgment in Defendant Eastman's favor. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cnty, Missouri*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *see also Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2014) ("An officer may be liable only for his or her own use of excessive force") (quoting *Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014)). On the evidence before the Court, no reasonable juror could find that Eastman was sufficiently involved in the alleged use of force to subject him to liability under § 1983.

     According to Eastman's Affidavit, he "was assigned as First Shift Supervisor at [the] Nebraska State Penitentiary" on July 28, 2018, at the time of the incident involving Plaintiff. Filing 82-2 at 1. Apart from unsuccessfully attempting to interview Plaintiff after the incident, there is no evidence Eastman was personally involved in the acts giving rise to Plaintiff's Eighth Amendment claims. *See generally* Filing 82-2. His status as a supervisor for other named Defendants is insufficient by itself to impart liability on the claims at issue here. *See Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) (noting "neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior").

     The Court recognizes that a supervisor may be liable if "his failure to properly supervise and train the offending employee caused the constitutional violation at issue." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (internal quotation marks omitted). In his opposition filing, Plaintiff does attempt to make out such a claim that the Nebraska Department of Correctional Services "maintain[ed] a policy of permitting its officers . . . to violate [his] Constitutional rights" and that it further "fail[ed] to properly train and supervise its officers . . . ." Filing 85 at 12. Plaintiff

10

does not mention Eastman—or any other individual—by name in this portion of his filing. *See* Filing 85 at 12. Such a claim was also not pleaded in his Amended Complaint; nor did Judge Kopf suggest that such a claim had been pleaded when he issued his Preservice Screening Order. *See* Filing 28 at 13. Generally, a plaintiff cannot "manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment*.*" *N. States Power Co. v. Fed. Transit Admin*, 358 F.3d 1050, 1057 (8th Cir. 2004).

However, even if Plaintiff's Amended Complaint were to be so liberally construed such that one could conclude he made a claim against Eastman for failing to properly supervise and train the other Defendants, there is simply no evidence to support such a claim. Defendants included an Affidavit from a Kenneth Sturdy, a Training Manager at the Nebraska Department of Correctional Services' Staff Training Academy. *See* Filing 82-5. After reviewing the reports filed by the corrections officers involved in Plaintiff's restraint as well as the video of the incident, Sturdy "conclude[d] that the officers responding to that incident acted within the scope of their training[,] [t]he C-clamp used by Officer Shaffer [sic] was appropriate for the situation[,] [t]he corrections officers carried [Plaintiff] safely and appropriately[,] [and] [t]he minimum amount of force necessary to control [Plaintiff] was utilized in this situation." Filing 82-5.

Furthermore, "[a] failure-to-supervise claim may be maintained only if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Because there is no evidence before the Court that the other Defendants took inappropriate actions in restraining Plaintiff, Eastman necessarily could not have been deliberately indifferent to inappropriate acts that never occurred. Plaintiff does not directly address, let alone contest, Sturdy's Affidavit in his opposition filing. *See generally* Filing 85. Thus, the Court grants summary judgment in Eastman's favor on the excessive force claim because

11

Plaintiff has not shown how he was sufficiently involved in the alleged violation—even if there was one—to trigger liability under § 1983. *Kingsley*, 964 F.3d at 700.

### 3. Plaintiff's Eighth Amendment Excessive Force Claim Against the Other Defendants

The Court now turns to the merits of Plaintiff's Eighth Amendment excessive force claim against Partida, Schaffer, and Wessel. Each of these Defendants is entitled to qualified immunity. Plaintiff has not identified any affirmative evidence from which a jury could find that he has met his burden of proving anything remotely resembling a malicious or sadistic motive to harm on the part of these three Defendants. *Burns*, 752 F.3d at 1139. Plaintiff himself even acknowledges in his filing that "a plaintiff's version of facts must find support in the record." Filing 85 at 3. His excessive force claim is without evidentiary support. Plaintiff claims that body camera footage and other videotapes capturing the incident "will show" that the Defendants' versions of events are "[f]alse" and that they are trying to "cover up [their] wrongdoing that [is] clearly captured" on camera. Filing 85 at 12. The problem for Plaintiff is that he has not included any video recording—or any other evidence for that matter—in opposition.[7]

Plaintiff also asserts that his excessive force claim should be analyzed "without regard to [the Defendants'] underlying intent or motivation." Filing 85 at 9 (citing the Fourth Amendment standard for excessive force articulated in *Graham v. Connor*, 490 U.S. 386, 398 (1989)). Plaintiff is mistaken because his claim is grounded in the Eighth Amendment, not the Fourth Amendment.

---

[7] Plaintiff attempted to obtain body camera footage by filing a motion for issuance of a subpoena duces tecum on September 9, 2022—over a week after Defendants submitted their Motion for Summary Judgment. Filing 86. United States Magistrate Judge Susan M. Bazis subsequently denied Plaintiff's motion on September 20, 2022, because, pursuant to the progression order in this case, the written discovery deadline was January 7, 2022, and the deposition deadline was June 13, 2022. Filing 87 at 1; *see also* Filing 61. Thus, "[t]he deadline for seeking discovery regarding the issue of qualified immunity [had] passed" at the time Plaintiff submitted his motion for issuance of a subpoena duces tecum. Filing 87 at 2. Plaintiff did not file an objection to Magistrate Judge Bazis's Order within 14 days. To the extent Plaintiff disagrees with Magistrate Judge Bazis's Order, he cannot contest it now because "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a).

Accordingly, "the subjective motivations of [Defendants] are of central importance" in this case. Burns, 752 F.3d at 1139. Indeed, "the core judicial inquiry" here is whether Defendants applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Smith, 759 F.3d at 858.

Even when viewing the evidence before the Court in the light most favorable to Plaintiff and affording him all reasonable inferences, no reasonable jury could find that Defendants were acting with a malicious and sadistic motive to cause harm when they took actions to restrain Plaintiff. Smith, 759 F.3d at 858. Instead, the only conclusion a reasonable jury could draw from the evidence is that Defendants took responsive measures "in a good-faith effort to . . . restore discipline" in the face of a recalcitrant inmate. Smith, 759 F.3d at 858; see also Cook v. City of Bella Villa, 582 F.3d 840, 850 (8th Cir. 2009) ("summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy"). Sturdy states in his Affidavit that Plaintiff "was displaying resistive behavior" and that [b]ased on [his] training and experience . . . the officers in this case acted within the scope of their training and used the minimum amount of force necessary to control the inmate." Filing 82-5. Again, Plaintiff does not address or specifically contest Sturdy's conclusions in his opposition filing. *See generally* Filing 85.

At an absolute minimum, Plaintiff has failed to meet his burden to show it was "sufficiently clear" to Defendants "that every reasonable official would [have understood] that what [they were] doing violate[d]" Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Reichle, 566 U.S. at 664 (first alteration in original); *see also* Morgan, 920 F.3d at 524 (noting this burden belongs to the plaintiff). Thus, Defendants are entitled to qualified immunity under the second prong of the qualified immunity analysis. *See* Hamner v. Burls, 937

13

F.3d 1171, 1177 (8th Cir. 2019), *as amended* (Nov. 26, 2019) (noting that in order to overcome a claim of qualified immunity in an Eighth Amendment case, the "plaintiff need not cite a case directly on point, but controlling authority or a robust consensus of cases of persuasive authority must have put the statutory or constitutional question beyond debate as of the date of the alleged violation") (internal quotation marks omitted). Plaintiff has not provided this Court with any such authority firmly resolving this question in his favor, and the Court is not aware of any such authority either. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment excessive force claim.

### C. The Eighth Amendment Deliberate Indifference Claims

#### 1. Legal Standards

"Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). An Eighth Amendment deliberate indifference claim requires a plaintiff to "demonstrate that he suffered from an objectively serious medical need and that [the defendants] actually knew of but deliberately disregarded the need." *Santiago*, 707 F.3d at 990. Thus, "the deliberate indifference standard has both objective and subjective prongs." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016).

With respect to the objective prong, "[a] serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Santiago*, 707 F.3d at 990 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). The subjective prong (*i.e.*, whether defendants actually knew about and deliberately disregarded such a need) presents "an extremely high standard that requires a mental state of 'more . . . than gross negligence.'" *Saylor*, 812 F.3d

14

at 644 (quoting *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014)). "Even medical malpractice does not automatically constitute deliberate indifference." *Saylor*, 812 F.3d at 644. Instead, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993)); *see also Saylor*, 812 F.3d at 644 (describing the deliberate indifference threshold as "akin to criminal recklessness"). Moreover, "[t]he defendant-official's state of mind must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Kulkay*, 847 F.3d at 643 (internal quotation marks omitted).

2. *Plaintiff's Eighth Amendment Deliberate Indifference Claims*

The Court likewise concludes that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim for deliberate indifference to his medical needs. As for Defendants Partida, Schaffer, and Wessel, there is no evidence that any of them "actually knew of but deliberately disregarded" an objectively serious medical need. *Santiago*, 707 F.3d at 990. In the absence of such evidence, no reasonable jury could find that Defendants possessed the requisite mental state necessary to establish the second prong of an Eighth Amendment deliberate indifference claim. *Saylor*, 812 F.3d at 644. Most of the injuries Plaintiff claims to have sustained (*e.g.*, a popped rib, an injured wrist, unspecified pain) were internal in nature; they are not the type of injuries that are "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Santiago*, 707 F.3d at 990.

As to the injuries Plaintiff claims to have suffered that would have theoretically been externally visible (i.e., "bruises" and "cuts"), Filing 17 at 4, there is no evidence that Partida, Schaffer, and Wessel ever observed any such injuries—even if these injuries could be considered "objectively serious." Indeed, the evidence indicates that medical personnel evaluated Plaintiff and "noted no injuries." Filing 82-2 at 9. Apart from alleging that he suffered bruises and cuts, Plaintiff

15

has offered no actual evidence in support of these assertions. But even if he had, the fact that a Licensed Practical Nurse did not note any such injuries when she evaluated Plaintiff undermines any contention that Partida, Schaffer, and Wessel were deliberately indifferent to a medical concern that trained medical personnel did not notice. Because there is no evidence indicating that Plaintiff ever told Partida, Schaffer, or Wessel of any of these injuries—or that they were somehow made aware of them through other means—Plaintiff cannot establish anything close to a "highly culpable state of mind approaching actual intent" on their part. *Kulkay*, 847 F.3d at 643. Partida, Schaffer, and Wessel are, therefore, entitled to qualified immunity. *See Gregoire v. Class*, 236 F.3d 413, 418 (8th Cir. 2000) (citing *Farmer*, 511 U.S. at 837, for the proposition that "deliberate indifference is judged only on factors the official[s] actually knew").

That leaves only Eastman. Unlike the other Defendants, Eastman did attempt to interview Plaintiff after force was used against him on July 28, 2018. Filing 81 at 17. However, when Eastman attempted to speak with him, Plaintiff would not answer any of Eastman's questions. Filing 82-2 at 2, 9. The "Use of Force Report" signed by Eastman on July 28, 2018, further indicates that Plaintiff was evaluated by a Licensed Practical Nurse who "noted no injuries." Filing 82-2 at 9. Accordingly, a jury could not reasonably conclude from this evidence that Eastman exhibited a degree of indifference "akin to criminal recklessness" when there is nothing to suggest he was aware of any objectively serious injury to Plaintiff. *Saylor*, 812 F.3d at 644.

As noted above, Plaintiff did not support with any evidence his assertion that he complained of pain for eleven days before finally being seen by a medical provider. However, even if this Court were to accept this assertion, Plaintiff never alleges to whom he actually made these complaints in the first place. There is no evidence that he made these complaints to Eastman, Partida, Schaffer, or Wessell. By definition, these Defendants cannot be deliberately indifferent to

something they never knew about. In the absence of any evidence that Plaintiff complained to any of these Defendants, they cannot be liable under § 1983 on Plaintiff's Eighth Amendment claim for deliberate indifference to his medical needs. Accordingly, the Court grants summary judgment in Defendants' favor on this claim.

### III. CONCLUSION

For the foregoing reasons, Defendants are entitled to qualified immunity as to both of Plaintiff's claims under the Eighth and Fourteenth Amendments to the United States Constitution. Accordingly,

IT IS ORDERED: Defendants' Motion for Summary Judgment, Filing 80, is granted in full, and summary judgment is entered in Defendants' favor. To the extent Plaintiff's "Motion making sense of Qualified immunity: Summary Judgment and issues For the trier of Fact," Filing 83, and Plaintiff's "Motion to Strike," Filing 85, seek relief other than opposition to Defendants' Motion for Summary Judgement, Filing 83 and Filing 85 are denied.

Dated this 2nd day of November, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge